# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA AARON KERSHAW,<br><br>    Petitioner,<br><br>    v.<br><br>CHARLES HARRISON, Warden,<br><br>    Respondent.<br>_____/ | CV F 06-1180 DLB HC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DIRECTING CLERK OF COURT TO ENTER JUDGMENT; AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY<br><br>[Doc. 1] |

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is represented by Conrad Petermann, Esq. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

BACKGROUND[1]

Following jury trial in the Kern County Superior Court, on June 19, 2003, Petitioner was found guilty of two counts of robbery (Cal. Penal Code § 211)[2], one count of possession of a firearm by an ex-felon (§ 12021(a)(1)), and resisting arrest (§ 148).

On September 5, 2003, Petitioner was sentenced to the upper term of five years on Count I (§ 211), doubled pursuant to California's Three Strikes law. On Count II (§ 211), he was sentenced to one-third of the midterm, one year, doubled pursuant to the three strikes law, to be served consecutively. His sentence was then enhanced by 10 years for the personal use of a

---

[1] This information is derived from the petition for writ of habeas corpus and Respondent's answer.

[2] All further statutory references are to the California Penal Code unless otherwise indicated.

firearm on Count I, and by three years, four months on Count II.  In addition, Petitioner's term was enhanced by five years for his prior felony conviction pursuant to section 667(a).  Concurrent terms were imposed on counts III and IV.  The total term of imprisonment was 30 years, four months. (CT 426-428.)

Petitioner filed a timely notice of appeal.  On May 5, 2005, the California Court of Appeal, Fifth Appellate District affirmed Petitioner's conviction and sentence. (Exhibit B.)

On June 14, 2005, Petitioner filed a petition for review in the California Supreme Court.  The petition was denied on August 10, 2005. (Exhibit C.)

Petitioner filed the instant petition for writ of habeas corpus on August 31, 2006. (Court Doc. 1.)  Respondent filed an answer to the petition on March 30, 2007, and Petitioner filed a traverse on April 12, 2007. (Court Docs. 15, 18.)

## STATEMENT OF FACTS[3]

> [Petitioner] and Vashon Jones entered a bank on the afternoon of September 5, 2002, pulled out handguns and ordered everyone in the bank to lie on the floor.  While Jones ordered a teller to give him money, [Petitioner] remained in the center of the bank holding his gun toward the victims and shouting orders to stay down.  The teller handed Jones a black bag with money inside, including a bundle of bills containing an explosive packet of red dye.  Jones went to a second teller and ordered her to give him money.
>   [Petitioner] and Jones left the bank and ran toward an apartment complex.  There, they were picked up by James Westmoreland, who had been waiting in a car.  The packet containing the red dye exploded. [Petitioner], Jones and Westmoreland drove off, leaving behind the bag containing the packet and $5,230.  After a short distance, Jones exited the car.
>   A police officer, responding to a dispatch for a robbery in progress, pursued the car.  When the car stopped briefly, Westmoreland got out and ran.  The brakes of the car locked, and [Petitioner] jumped out of the window of the car while it was still moving.  The car landed in a canal.  An unloaded .38-caliber handgun was found in the car.
>   [Petitioner's] girlfriend testified in his defense, stating he had been drinking heavily, smoking a substantial amount of marijuana, and had not slept the day or night before the robbery. [Petitioner] left his girlfriend's house sometime midmorning.  Codefendant Westmoreland's wife testified that [Petitioner] had been at their home until about noon on the morning of the robbery, smoking marijuana with several others.  An expert called by the defense testified that, if the facts testified to were true, an individual would have been in a confused state at the time of the robbery and his perception, attention, ability to focus and to complete tasks would have been impaired.

---

[3] The Court finds the Court of Appeal correctly summarized the facts in its May 5, 2005 opinion. (Exhibit B.)  Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

> In rebuttal, the officers who arrested [Petitioner] testified that they observed no signs of intoxication. Neither did the booking clerk at the jail several hours after [Petitioner's] arrest. The prosecution presented evidence of a bank robbery committed by [Petitioner] two years earlier.

(Exhibit B, Opinion, at 2-3.)

## DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.  Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus

will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.   Instructional Error

Petitioner contends that the jury instruction regarding the use of the other crimes evidence violated his right to due process by failing to instruct the jury that it could not be used to demonstrate that he had a propensity to commit the instant offense and reduced the prosecution's burden of proof. Not so.

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in a federal habeas corpus action. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the

ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See id. at 72. Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982) (*citing* Henderson v, Kibbe, 431 U.S. 145, 154 (1977)). Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993) (whether the error had a substantial and injurious effect or influence in determining the jury's verdict.). See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Id.

As part of Petitioner's defense at trial, he argued that due to the heavy consumption of alcohol and marijuana, he was in a confused state at the time of the robbery and his perception, attention, and ability to focus were impaired. (See RT 100-102, 1139-1143, 1145, 1150, 1152-1155.)

In rebuttal, the prosecution presented evidence of a prior bank robbery committed by Petitioner to show his intent. Specifically, an employee of the bank testified that on February 23, 2000, Petitioner entered a Bank of American in Madera wearing a sweatshirt with the hood pulled up over his face. Petitioner approached the teller and handed her a note. The note demanded money and threatened use of a gun if she did not comply. The teller emptied her cash drawer, and gave Petitioner approximately $20,000. Petitioner left the bank, and was later apprehended by an FBI agent and confessed to the crime. (RT 877-889.)

At the conclusion of the trial, the court instructed the jury with CALJIC No. 2.50 on the use of this evidence as it related to Petitioner's intent as follows:

> Evidence has been introduced for the purpose of showing that [Petitioner]

committed a crime other than that for which he is on trial.

    This evidence, if believed, may be considered by you only for the limited purpose of determining if it tends to show the existence of the intent which is a necessary element of the crime charged. For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in this case.

    Within the meaning of the preceding instruction, the prosecution has the burden of proving by a preponderance of the evidence that [Petitioner] committed the other crime.

    You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that [Petitioner] committed the other crime.

    If you find the other crime - the other crime was committed by a preponderance of the evidence, then you nevertheless - - you are nevertheless cautioned and reminded that before [Petitioner] can be found guilty of any crime charged or any included crime in this trial, the evidence as a whole must persuade you beyond a reasonable doubt that he is guilty of that crime.

(RT 1048-1049.)

In denying Petitioner's claim on direct appeal, the Court of Appeal held, in relevant part as follows:

> [Petitioner] now contends the instruction as given was erroneous as it did not include the language from the second paragraph that the evidence "may not be considered by you to prove that defendant is a person of bad character or that he has a disposition to commit crimes." [Petitioner] contends that, without this admonition, the jury was permitted to draw the inference that he had a propensity to commit robbery, and that the prosecution's burden of proof was thus reduced, in violation of [Petitioner's] Fourteenth Amendment due process rights.
>
> We disagree. In deciding an assertion of instructional error, we consider the instructions as a whole, and we assume the jurors are capable of understanding and correlating all the instructions. [citations.] Although the language in question was omitted, the instruction as given specified that the purpose of the other crimes evidence was limited to determining intent. The instruction also included the following admonition:
>
>> "If you find . . . the other crime was committed by a preponderance of the evidence, then you . . . are nevertheless cautioned and reminded that before [appellant] can be found guilty of any crime charged or any included crime in this trial, the evidence as a whole must persuade you beyond a reasonable doubt that he is guilty of that crime."
>
> We conclude the CALJIC No. 2.50 instruction given to the jury neither permitted the jury to infer guilt based on [Petitioner's] character or propensity to commit the crime with which he was charged nor lowered the prosecutor's burden of proof in violation of [Petitioner's] right to due process.

(Exhibit B, Opinion, at 3-4.

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Evidence of the commission of other crimes by a criminal defendant is admissible if relevant to prove some fact other than the

6

defendant's disposition to commit such acts. Cal. Evid. Code § 1101, subd. (b). Here, Petitioner does not challenge the admissibility of the evidence, per se, rather Petitioner challenges the court's instruction to the jury regarding the other crime evidence. CALJIC No. 2.50 provides in pertinent part:

> [Evidence has been introduced for the purpose of showing that the defendant committed [a crime] [crimes] other than that for which [he][she] is on trial[.] . . .
> [Except as you will otherwise be instructed,] [This] [this] evidence, if believed, [may not be considered by you to prove that defendant is a person of bad character or that [he] [she] has a disposition to commit crimes. It] may be considered by you [only] for the limited purpose of determining if it tends to show: . . .[¶][¶]
> [The existence of the intent which is a necessary element of the crime charged;]

CALJIC No. 2.50 (2005 Revision). The use note to CALJIC No. 2.50 states, in relevant part, "[i]f the first bracketed paragraph is given, regarding intent or identity, delete the repetitive bracketed paragraphs two and/or three. [¶] The second paragraph has been phrased to accommodate situations where evidence is received per Evidence Code § 1101(b) and per Evidence Code § 1108 and § 1109. . . ." In the instant case, the trial court instructed the jury with paragraph one on intent and deleted paragraph two. This was proper because the court instructed the jury with paragraph one stating:

> Evidence has been introduced for the purpose of showing that [Petitioner] committed a crime other than that for which he is on trial. This evidence, if believed, may be considered by you only for the limited purpose of determining if it tends to show the existence of the intent which is a necessary element of the crime charged. For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in this case.

Here, because the trial court properly instructed the jury that the prior robbery conviction was introduced for the limited purpose of demonstrating the existence of the intent which is a necessary element of the crime charged," and they were "cautioned and reminded that before [Petitioner] can be found guilty of any crime charged or any included crime in this trial, the evidence as a whole must persuade you beyond a reasonable doubt that he is guilty of that crime," the Court does not find that the failure to give the admonishment that the evidence could not be considered by the jury to prove that defendant was a person of bad character or that he had

7

a disposition to commit crimes rises to the level of a due process violation. As the jury was adequately instructed as to the limited use of the prior robbery evidence, it cannot be said that the giving of CALJIC No. 2.50 in this instance so infected the entire trial that the resulting conviction violates due process. Estelle, 502 U.S. at 72.

D.   Sentencing Error

Petitioner contends that imposing the upper term for count one and a consecutive term for count two and its accompanying enhancement violated his right to a jury trial under the Sixth Amendment.

    1.   Procedural Default

As part of Respondent's introduction, he argues that Petitioner's claim is procedurally barred by his failure to object at trial. (Answer, at p. 14.) In response, Petitioner argues that the claim is not procedurally barred.

First, the Court finds that Respondent has not sufficiently plead the procedural bar. The extent of his argument is based on one sentence in the introduction of his answer. Second, as Petitioner submits, the last reasoned opinion of the California Court of Appeal resolved the issue on the merits and did not rely or cite any procedural bar. (See generally Exhibit B, Opinion.) Because the issue is not properly briefed, the Court declines to engage in a discussion of whether the claim is procedurally defaulted.

    2.   Merits of Claim

In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), the Supreme Court overturned a sentencing scheme that allowed a state judge to enhance a defendant's penalty beyond the prescribed statutory maximum upon finding, by a preponderance of the evidence, that the defendant "acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation, or ethnicity." Apprendi v. New Jersey, 530 U.S. at 469. The Supreme Court reversed, holding that "any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to jury, and proved beyond a reasonable doubt." Id. at 490. (Emphasis added.)

In Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004), the Court explained that

the "statutory maximum" for *Apprendi* purposes is the "maximum" sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant.  In other words, the relevant "statutory maximum " is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional facts." Id. at 303-304.

In both Apprendi and Blakely, state law established an ordinary sentencing range for the crime the defendant was convicted of committing, but allowed the court to impose a sentence in excess of that range if it determined the existence of specified facts not intrinsic to the crime.  In each case the Supreme Court held that a sentence in excess of the ordinary range was unconstitutional because it was based on facts that were not admitted by defendant or found true by the jury beyond a reasonable doubt.

In United States v. Booker, 543 U.S. 220, 125 S. Ct. 788 (2005), the Court applied its holding in Blakely to the Federal Sentencing Guidelines, finding the Guidelines unconstitutional. In reforming the Guidelines, the Court stated "If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.  We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." Id. at 233.  "For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Id.

In People v. Black, 35 Cal. 4th 1238 (June 20, 2005), the California Supreme Court held that California's Determinative Sentencing Law satisfied federal constitutional law as follows: "*Blakely* and *Booker* established a constitutionally significant distinction between a sentencing scheme that permits judges to engage in the type of judicial fact finding typically and traditionally involved in the exercise of judicial discretion employed in selecting a sentence from within the range prescribed for an offense, and a sentencing scheme that assigns to judges the type of fact-finding role traditionally exercised by juries in determining the existence or nonexistence of elements of an offense." People v. Black, 35 Cal.4th at 1253.  "[I]n operation

and effect, the provisions of the California determinate sentence law simply authorize a sentencing court to engage in the type of fact-finding that traditionally has been incident to the judge's selection of an appropriate sentence within a statutorily prescribed sentencing range." Id. at 1254. The Court held that the "presumptive" midterm does nothing more than establish a "reasonableness" constraint on an otherwise wholly discretionary sentencing choice akin to that which the United States Supreme Court has deemed constitutional. Id. at 1261.

Most recently, in Cunningham v. California, __ U.S. __, 127 S.Ct. 856 (2007), the Supreme Court overruled the holding in Black, and held that the middle term in California's determinate sentencing law was the relevant statutory maximum for the purpose of applying Blakely and Apprendi. Id. at 868. Specifically, the Court held that imposing the upper sentence violated the defendant's Sixth and Fourteenth Amendment right to a jury trial because it "assigns to the trial judge, not the jury, authority to find facts that expose a defendant to an elevated 'upper term' sentence." Id. at 860.

In imposing Petitioner' sentence on September 5, 2003, the trial court found no factors in mitigation. In aggravation, the court found several circumstances in aggravation regarding the crime, including that it involved great violence; great bodily harm; demonstrated cruelty, viciousness, and callousness; planning, sophistication and professionalism; the guns were displayed in an extremely menacing and threatening manner; Petitioner's violent conduct evidences his danger to society; and in future robberies people will die. (RT of Sept. 5, 2003, at 22-24.) The court also found that Petitioner's prior convictions as an adult were numerous or increasing in seriousness. Petitioner had served a prior prison term. He was on probation or parole at the time of the incident, and his prior performance was unsatisfactory. (Id. at 22.)

On direct appeal, Petitioner argued that his upper term sentence on count I violated his right to a jury trial under Blakely. The state appellate court denied Petitioner's claim, finding that California's upper term sentencing scheme did not violate Blakely. (Exhibit B, at 9-13.) The California Supreme Court summarily denied Petitioner's petition for review. (Exhibit C.)

Because the state court's decision was issued prior to Cunningham, the issue becomes whether that decision should be applied retroactively to Petitioner on collateral review, which has

not yet been addressed by the Ninth Circuit Court of Appeals.  For the reasons discussed *infra*, this Court, like several other district courts, finds in the negative.

In <u>Teague v. Lane</u>, 489 U.S. 288, 109 S.Ct. 1060 (1986), the Supreme Court held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."  <u>Teague</u>, 489 U.S. at 310.  A new rule is one which "breaks new ground or imposes a new obligation on the States or the Federal Government;" in other words, a new rule is one where "the result was not dictated by precedent existing at the time of the defendant's conviction became final." <u>Teague</u>, 489 U.S. at 301; <u>Snook v. Wood</u>, 89 F.3d 605, 612 (9th Cir. 1996).

A <u>Teague</u> analysis requires the Court to engage in a three step process.  First, the Court must determine the date the petitioner's conviction became final.  See <u>Caspari v. Bohlen</u>, 510 U.S. 383, 390, 114 S.Ct. 948, 953-954 (1994); <u>Snook</u>, 89 F.3d at 612.  Second, the Court must survey the legal landscape as it existed when the petitioner's conviction became final and determine whether a state court considering the petitioner's claim at that time would have felt compelled by existing precedent to conclude the new rule was required by the Constitution. <u>Caspari</u>, 510 U.S. at 390; <u>Saffle v. Parks</u>, 494 U.S. 484, 488 110 S.Ct. 1257, 1260 (1990).  Third, if the Court determines that the petitioner seeks the benefit of new rule, the Court must consider whether the relief sought falls within one of the two narrow exceptions to non-retroactivity.  See <u>Gilmore v. Taylor</u>, 508 U.S. 333, 345, 113 S.Ct. 2112, 2119 (1993).  The two narrow exceptions are (1) "the rule places a class of private conduct beyond the power of the State to proscribe . . . or addresses a substantive categorical guarante[d] accorded by the Constitution;" or (2) the rule announces a "watershed rule[ ] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." <u>Graham</u>, 506 U.S. at 477-78, 113 S.Ct. 892, 903 (internal quotations omitted).  The first exception only applies to rules that place certain private "individual conduct beyond the power of the criminal law-making authority to proscribe." <u>Teague</u>, 489 U.S., at 307.  The second exception applies to watershed rules, which are those rules that are "central to an accurate determination of innocence or  guilt." <u>Teague</u>, 489 U.S. at 313, 109 S.Ct. 1060.  Watershed rules of criminal procedure implicate "the fundamental fairness and

accuracy of the criminal proceeding," Saffle, 494 U.S. at 495; Teague, 489 U.S. at 311, and are the small core of rules that require procedures which are implicit in the concept of ordered liberty. Graham, 506 U.S. at 478, 113 S.Ct. at 903.

First, neither Apprendi, Blakely, or Booker, have been applied retroactively. Sanchez-Cervantes, 282 F.3d 664, 666-667 (9th Cir. 2002); Schardt v. Payne, 414 F.3d 1025 (9th Cir. 2005); United States v. Cruz, 423 F.3d 1119, 1121 (9th Cir. 2005). This being so, it appears highly unlikely that Cunningham would be applied retroactively. This finding is supported by several district courts that have addressed the issue. See e.g. Fennen v. Nakayema, 494 F.Supp.2d 1148, 2007 WL 1742339 (E.D. Cal., June 14, 2007); Rosales v. Horel, 2007 WL 1852186 (S.D. Cal., June 26, 2007); Salerno v. Schriro, 2007 WL 2153584 (D. Ariz., July 24, 2007).

As was the case in Blakely, Cunningham shifted the decision-making authority from the judge to the jury to determine any facts which may increase a defendant's sentence, such determination is a procedural rather than substantive rule. Further, a mere change in the law as to the decision-making authority regarding factual findings bearing on a sentence enhancement is not a watershed rule in criminal procedure. See Schardt, 414 F.3d at 1036.

Here, the California Court of Appeal's decision, was subsequently affirmed by the California Supreme Court's decision in Black, which was overruled by the United States Supreme Court in Cunningham. Petitioner argues that Blakely was decided before his conviction became final, and Cunningham is merely an extension of the holding in Blakely and should be applied to the cases that were not final prior to the decision in Blakely, such argument is not persuasive. To make that determination, this Court would have to find that the holding in Cunningham was dictated by Blakely. The Cunningham decision was a six-member majority opinion. Justices Alito, Kennedy, and Breyer, filed a dissenting opinion, reasoning that Apprendi should not be extended to California's determinate sentencing law, because the sentencing

scheme was indistinguishable from the *advisory* Guideline scheme approved of in Booker.[4] Justice Alito, writing for the dissent stated that "the Booker Court unanimously agreed that judicial factfinding under a purely advisory guidelines system would [] comport with the Sixth Amendment." Cunningham, 127 S.Ct. at 874. It was noted that "the California law gives a judge at least as much sentencing discretion as does the post-Booker federal scheme." Id. at 877. "The California scheme-like the federal 'advisory Guidelines'-does require that this discretion be exercised reasonably." Id. at 878.

In light of the split and strong dissent in the Cunningham decision, it simply cannot be said that the result in Cunningham was dictated by Blakely. Even though the holding in Blakely was the central reasoning in support of the majority opinion in Cunningham, mere application of a prior decision is not equivalent to being "dictated by precedent." A new rule is defined as "a rule that ... was not 'dictated by precedent existing at the time the defendant's conviction became final.'" Whorton v. Bockting, __ U.S. __, 127 S.Ct. 1173, 1181 (2007). In light of the fact that three justices found that California's sentencing scheme was more akin to the advisory Guidelines of which Booker approved, this Court finds that "reasonable jurists" could find the same. See e.g. Whorton v. Bockting, 127 S.Ct. at 1181.

Next, the issue becomes whether the state courts' determination of this issue was contrary to, or an unreasonable application of Supreme Court authority. As noted by the state court of appeal, the last reasoned decision:

> [T]he sentencing court in this case concluded, based on evidence presented at trial: (1) that the crimes involved great violence, or a high degree of cruelty, viciousness and callousness; (2) that planning and sophistication were involved in carrying out the crimes; (3) that appellant posed a serious danger to society; (4) that he had a lengthy criminal history; and (5) that he had served a prior prison term and was on probation at the time of the offense, and that the court then chose in its discretion to impose the greatest sentence that it could impose for the crime found by the jury–a sentence the potential for which appellant had notice from the charged offense–does not in our view convert the court's selection of a sentencing option into the imposition of punishment for a crime not charged and found by the jury. We reject appellant's claim to the contrary.

---

[4] Justices Kennedy and Breyer also believed that Apprendi could be applied to only sentencing enhancements based on the nature of offense (jury determination) and not the nature of the offender (judicial determination). 127 S.Ct. at 872-873.

(Exhibit B, Opinion, at 12-13.)

As just stated, the imposition of the upper-term was based, in part, on Petitioner's prior convictions. Although in <u>Cunningham</u>, the Supreme Court invalidated California's upper-term sentencing scheme based on facts not found by the jury, it specifically acknowledged, as it did in prior cases, that sentences based on a defendant's prior convictions does not violate the Sixth Amendment. <u>Cunningham</u>, 127 S.Ct. At 860, 864, 868; *accord* <u>Blakely</u>, 542 U.S. at 301; <u>Apprendi</u>, 530 U.S. at 490; <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998). To this end, the trial court found that the upper-term was warranted based on the fact that Petitioner's prior convictions as an adult were numerous or increasing in seriousness, he had served a prior prison term, was on probation or parole at the time of the offense, and his prior performance on probation or parole was unsatisfactory.[5] (RT of Sept. 5, 2003, at 22-23.)

As Respondent correctly submits, the United States Supreme Court has never defined the scope of the prior conviction exception; however, circuit case law supports the finding that it is reasonable to conclude that this exception includes the type of judicial findings made by the trial court in this case.[6] To illustrate, the Second Circuit Court of Appeals, has held that the prior conviction exception includes "not only the mere fact of previous convictions but other related issues as well. Judges frequently must make factual determinations for sentencing, so it is hardly anomalous to require that they also determinate the 'who, what, when, and where' of a prior conviction." <u>United States v. Santiago</u>, 268 F.3d 151, 156 (2d Cir. 2001); see <u>United States v. Fagans</u>, 406 F.3d 138, 141-142 (2d Cir. 2005) ("the type and length of a sentence imposed seem logically to fall within this exception.") The Eighth Circuit Court of Appeals has determined that the prior conviction exception applies to "sentencing-related circumstances of recidivism," stating "that it is entirely appropriate for judges to have 'the task of finding not only the mere fact

---

[5] In addition, the jury found true the allegation that Petitioner personally used a firearm within the meaning of California Penal Code section 12022.5, however, the court exercised its discretion to not impose that enhancement. (ART 24-25.)

[6] Out-of-circuit federal and state appellate court decisions are helpful in determining the reasonableness of a particular state court adjudication. <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.6 (9th Cir. 2000),

of previous convictions but other related issues as well.'" United States v. Kempis-Bonola, 287 F.3d 699, 703 (8th Cir. 2002).  In addition, the Tenth Circuit Court of Appeals has stated that "the 'prior conviction' exception extends to 'subsidiary findings' such as whether a defendant was under court supervision when he or she committed a subsequent crime." United States v. Corchado, 427 F.3d 815, 820 (10th Cir. 2005).

In addition, several state courts, including the California Supreme Court have likewise found that the prior conviction exception includes the type of finding as was made in the instant case.  More specifically, the California Supreme Court has noted that the exception includes more than the mere fact of a prior conviction and includes such matters as the sentence imposed and the status and timing of the incarceration in relation to the subsequent offenses. People v. McGee, 38 Cal.4th 682, 700-703 (2006) (*citing with approval* People v. Thomas, 91 Cal.App.4th 212, 221-222 (2001)); see also State v. Stewart, 791 A.2d 143, 151-152 (Md. 2002) (prior conviction exception "is not limited solely to prior convictions.  The general rule is that there is no right to a jury trial on matters related to the broader issue of recidivism.").  The Supreme Courts of Washington, Connecticut, Indiana, and Minnesota have all held that the exception may include a determination of whether the defendant was on probation at the time of the current offense.  See State v. Jones, 149 P.3d 636, 640-641 (Wash. 2006); State v. Fagan, 905 A.2d 1101, 1121 (Conn. 2006); Ryle v. States, 842 N.E.2d 320, 323-325 (Ind. 2005); State v. Allen, 706 N.W.2d 40, 47-48 (Minn. 2005).

Moreover, in California, "[a] single aggravating factor is sufficient to impose an aggravated upper prison term where the aggravating factor outweighs the cumulative effect of all mitigating factors. . . ." People v. Nevill, 167 Cal.App.3d 198, 202 (1985); see also People v. Black, 41 Cal.4th 799, 806 (2007).  Here, it was reasonable for the state appellate court to find that Petitioner's constitutional right to a jury trial was not violated when the trial court imposed the upper term based, in part, on the fact that he was on probation or parole at the time of the offense, he had previously performed unsatisfactorily on probation or parole, and his crimes were of increasing seriousness.  Accordingly, because the trial court's imposition of the upper term was properly based, in part, on Petitioner's recidivism, it was reasonable to reject Petitioner's

jury trial claim, and the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

Furthermore, even if there was error under <u>Blakely</u>, Petitioner has not established the requisite harm. <u>Blakely</u> errors are subject to harmless error analysis as it is not considered to be a structural error. <u>Washington v. Recuenco</u>, __ U.S. __, 126 S.Ct. 2546 (2006). In a habeas corpus proceeding, the proper standard of review is that announced in <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993), whether the error had a "substantial and injurious effect." This is so, regardless of whether the state appellate court recognized the error and reviewed it for harmless under the "beyond a reasonable doubt" standard of <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967). <u>Fry v. Pliler</u>, __ U.S. __, 127 S.Ct 2321, 2325-2327 (2007). Because only one aggravating factor need be found to impose the upper term sentence, the error is harmless if the jury could have found, at a minimum, at least one of the aggravating circumstances true beyond a reasonable doubt.

Here, any error was harmless as the imposition of the upper term was based primarily on uncontested or overwhelming evidence of Petitioner's recidivism. It was undisputed that Petitioner had a lengthy criminal history, as the probation report reflected a prior misdemeanor, in addition to two prior felonies including a bank robbery in 2000. (CT 418.) He had previously performed unsatisfactorily on parole or probation and his offenses were increasing in seriousness. In addition, he was on probation or parole at the time of the commitment offense. There was ample evidence for the jury to render a verdict beyond a reasonable doubt on the above recidivist circumstances, any one of which would have authorized the imposition of the upper term. This is particularly so, given the lack of any mitigating factors and the strong overwhelming evidence supporting the recidivist factors in aggravation. Based on the foregoing, the Court finds that any error was harmless under <u>Brecht</u>, and the claim should be denied.

To the extent Petitioner argues that the imposition of consecutive sentences for both robbery counts, violated the holdings in <u>Apprendi</u> and <u>Blakely</u>, it too is without merit. In rejecting Petitioner's claim on direct appeal, the Court of Appeal stated:

> We agree that judicial factfinding occurs in connection with a trial court's

> exercise of discretion in sentencing concurrently or consecutively. We believe, however, that the concern addressed in *Blakely* and *Apprendi* is not judicial factfinding in connection with the exercise of sentencing discretion, but, instead, the erosion of the right to trial by jury of crimes, about which Justice Scalia commented in his dissenting opinion in *Monge v. California, supra*, 524 U.S. at pages 737-741. We do not find that concern to be implicated in consecutive sentencing.

(Exhibit B, Opinion, at 13.)

The imposition of the consecutive sentences for Counts 1 and 2 of robbery was wholly authorized by the jury's finding of guilt on both of these counts. Under California Rule of Court 4.433(c), the trial court is allowed to impose consecutive sentences for separate offenses as it does not involve any judicial factfinding, and Blakely is simply not implicated.[7] As both counts of robbery were submitted and determined to be found true beyond a reasonable doubt by the jury, the trial court merely exercised its discretion in imposing consecutive terms within the statutory range. No judicial factfinding was determined when rendering the consecutive sentences, and the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent as set forth in Apprendi and its progeny.

## ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED;
2. The Clerk of Court is directed to enter judgment in favor of Respondent; and,
3. The court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," i.e., when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"; Hoffman v. Arave, 455 F.3d 926, 943 (9th Cir. 2006) (same). In the present case, the Court finds that reasonable

---

[7] In fact, Apprendi and Blakely both involved a sentence for a single crime, not the aggregate effect of a defendant's sentence for multiple offenses. Apprendi, 530 U.S. at 474; Blakely, 542 U.S. at 299, n.2 (finding defendant's additional sentence on a separate count "not relevant" to the discussion).

17

jurists would not find it debatable that the state courts' decision denying Petitioner's petition for writ of habeas corpus were not "objectively unreasonable."

IT IS SO ORDERED.

Dated:  **January 25, 2008**                              /s/ **Dennis L. Beck**
                                                                       UNITED STATES MAGISTRATE JUDGE